UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DIANE LYNN MANCINI,

      Plaintiff,

v.                               Case No. 2:19-cv-798-JLB-NPM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## REPORT AND RECOMMENDATION

Diane Lynn Mancini seeks judicial review of a denial of Social Security disability insurance benefits. The Commissioner of the Social Security Administration filed the transcript[1] of the proceedings, and the parties filed a Joint Memorandum (Doc. 19). As discussed in this report, the decision of the Commissioner should be reversed and remanded.

## I.    Eligibility for Disability Benefits and the ALJ's Decision

### A.    Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that has lasted or can be expected to last for a continuous period of not less than twelve months.[2] The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.[3]

## B.    Procedural history

On February 15, 2017, Mancini applied for disability insurance benefits and supplemental security income. (Tr. 19, 72, 133-134). She asserted an onset date of April 27, 2016, alleging disability due to arthritis, back injury, spine injury, migraines, sinusitis, chronic headaches, chronic IBS (irritable bowel syndrome), cornea edema, erosion due to sicca syndrome, asthma, and chronic bronchitis. (Tr. 19, 66-67, 73-74). Her claims for benefits were administratively denied initially on April 24, 2017, and upon reconsideration on July 7, 2017. (Tr. 19, 66-72, 73-82, 87, 93).

At Mancini's request, the Administrative Law Judge ("ALJ") held a hearing on August 6, 2018, concerning the denial of disability benefits. (Tr. 35-65, 98-99). On November 7, 2018, the ALJ found Mancini not disabled from the alleged onset date through the date of decision. (Tr. 16-30). On September 17, 2019, the agency's Appeals Council denied Mancini's request for review. (Tr. 1-5). She then filed a

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

Complaint (Doc. 1) with this Court on November 6, 2019, and the case is ripe for review.

### C.    The ALJ's decision

An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, the administration's hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the

hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See Washington*, 906 F.3d at 1359; *see also* 20 C.F.R. § 404.1512(a)(1) (providing that the claimant must prove disability); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

In this matter, the ALJ found Mancini met the insured status requirements through September 30, 2021. (Tr. 23). At step one of the evaluation, the ALJ found Mancini had not engaged in substantial gainful activity since her alleged onset date.

4

(Tr. 23). At step two, the ALJ characterized Mancini's severe impairment as "migraines." (Tr. 23). At step three, the ALJ determined Mancini did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 24).

As the predicate to step four, the ALJ arrived at the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant retains the capacity to perform Light work with the ability to occasionally lift and/or carry up to 20 pounds as defined in the regulations, as well as, lift and/or carry 10 pounds frequently. The claimant has no limits for sitting in an eight-hour workday. She is capable of standing and/or walking for up to six hours in an eight-hour workday. She is able to perform occasional postural functions of climbing ramps and stairs, kneeling, and stooping. She is to perform no crawling, no crouching, and no climbing of ladders, ropes, or scaffolds. The claimant is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. The claimant is to perform no work with vibratory tools or equipment. Secondary to asthma and/or allergies, the claimant is to avoid concentrated exposure to respiratory irritants such as fumes, odors, smoke, gases, and poor ventilation. The claimant is to avoid concentrated exposure to extremes of heat, humidity, and cold temperatures.

(Tr. 24-25). On the alleged onset date, Mancini was 50 years old. (Tr. 66, 73). She has an associate degree, and her work history includes several administrative assistant positions. (Tr. 41, 147, 174-188). Relying on the testimony of a vocational expert, the ALJ, at step four, found Mancini "capable of performing past relevant work as actually and generally performed," listing the following jobs:

5

(1)  Customer service clerk (DOT 249.262-010) with a sedentary exertion level and performed by the claimant at sedentary exertion level with some sit/stand and with a Specific Vocational Preparation ("SVP") of 6.

(2)  Administrative assistant (DOT 169.167-010) with a sedentary exertion level and performed by the claimant at the sedentary exertion level with a combination of sit/stand and with an SVP of 7.

(3)  Accounts payable clerk (DOT 216.482-010) with a sedentary exertion level and with an SVP of 5.

(4)  Receptionist (DOT 237.367-038) with a sedentary exertion level and with an SVP of 4.

(Tr. 29).[4] The ALJ therefore concluded that Mancini had not been under a disability within the meaning of the Social Security Act from the alleged onset date of April 27, 2016, through November 7, 2018, the date of the ALJ's decision. (Tr. 30).

## II.   Analysis

Mancini's appeal presents the following issues:

(1)  Whether the ALJ properly considered the opinions of Patricia Dillard, ARNP, and Debra Roggow, D.O.;

(2)  Whether the ALJ properly considered Mancini's spine impairment; and

(3)  Whether the ALJ properly considered the impact of Mancini's migraine headaches on her RFC.

(Doc. 19, pp. 9, 15, 22).

---

[4] The DOT numbers refer to the Dictionary of Occupational Titles and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work, in a purely physical sense, that the job requires, and it is divided into five categories: sedentary, light, medium, heavy and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled and skilled, with the SVP providing further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled, SVP 3 and 4 are semiskilled, and SVP 5 through 9 are skilled.

### A.      Standard of review

While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the agency's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.    Whether the ALJ properly considered the opinions of Patricia Dillard, ARNP, and Debra Roggow, D.O.**

Mancini challenges the ALJ's reasons for discrediting the opinions of Nurse Dillard and Dr. Roggow.

### *1.    Patricia Dillard, ARNP*

From about June 1, 2016, through at least April 18, 2018, Mancini obtained chiropractic care from Dr. Patrick King. (Tr. 24, 282, 389). Near the end of this nearly two-year course of care with Dr. King, Mancini visited with Nurse Dillard, of Dr. King's office, on February 19, 2018. This is the only recorded visit with Dillard, and she inexplicably refers to Mancini as a "new patient." (Tr. 396). Dillard's note also states that x-rays were ordered, but the only x-ray report offered into the record was from October 2016. (Tr. 555). Records show Mancini met with Dr. King the same day. (Tr. 395). Dr. King's treatment notes reflect Mancini's condition was stable and unchanged from the asymptomatic findings made during previous visits. (Tr. 395, 397-398).

On March 7, 2018, Dillard completed a form titled "Medical Source Statement," which the ALJ extensively summarized in her decision. (Tr. 26-27, 336-337). By marking checkboxes and filling in blanks, Dillard opined that Mancini was limited to lifting less than 10 pounds occasionally due to cervical pain, thoracic pain, lumbar pain, bilateral knee pain, and bilateral shoulder pain. (Tr. 336). She noted this opinion was supported by examination and x-rays showing arthritis. (Tr. 336).

8

For the same reasons, she opined that Mancini could sit, and stand and/or walk for less than 2 hours each in an 8-hour workday; she could perform reaching for one-third of a workday, but her postural abilities and her abilities to perform handing, fingering, and feeling were limited to less than one-third of a workday; she would need a 10-15 minute break every 10 minutes; need to rest for 2-3 hours in the morning and for 2-3 hours in the afternoon; and she would miss three days of work per month. (Tr. 336-337). Referring to a history of Sjorgren's Syndrome, corneal edema, and corneal erosion, Dillard opined that Mancini also had moderate visual limitations. (Tr. 337). Dillard further opined that for only one-third of a workday could Mancini concentrate; follow, carry out, remember, and understand simple instructions; use judgment and respond to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting. (Tr. 337). In other words, Dillard opined Mancini would be off task more than 60 percent of the time.

Regarding Dillard's opinion, the ALJ stated the following:

> The undersigned gives little weight to the opinions of Pat Dillard, A.R.N.P. (Ex. 7F). This is not an acceptable medical source. The opinions are not supported by the findings on examination of Dr. King throughout his treatment with the claimant meeting goals on June 15, 2016 and continuing through 2017 and 2018 with stable findings, asymptomatic, and the patient tolerated and responded well to treatment. The opinions are also not supported by the claimant's treating physician who found the claimant's findings on examination unremarkable throughout.

(Tr. 29).

Pursuant to the regulations that govern Mancini's application for disability benefits, nurses are not "acceptable medical sources" whose opinions an ALJ must consider when making a disability determination. *See* 20 C.F.R. § 404.1513(a), (d)(1) (effective September 3, 2013 to March 26, 2017) (listing nurse practitioners as "other sources"); 20 C.F.R. § 404.1527(a)(1) (defining "medical opinions" as certain "statements from *acceptable medical sources*" (emphasis added)). Because nurses are considered "other sources," they "cannot establish the existence of a medically determinable impairment, produce medical opinions, or be considered treating sources." *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 872 (11th Cir. 2020) (citing SSR 06-03p,[5] 71 FR 45593, 2006 WL 2263437). Thus, an ALJ may consider a nurse's treatment notes or opinions but need not expressly discuss or assign them any particular weight. *Id.* (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

While an ALJ is not required to explicitly discuss each piece of evidence, ALJs have a duty to "*consider* all of the available evidence in the [claimant's] case record." SSR 06-03p. As provided in 20 C.F.R. § 404.1527(f)(2), an ALJ generally should explain the weight given to opinions from medical sources who are not acceptable medical sources, "or otherwise ensure that the discussion of the evidence

---

[5] While SSR 06-03p was rescinded effective March 27, 2017, it remains effective for claims—such as this one—filed before March 27, 2017. Fed. Reg. Notice Vol. 82, No. 57, page 15263.

in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of a case."

Discounting Dillard's opinions, the ALJ first noted that nurses are not acceptable medical sources. (Tr. 29). Also, the ALJ found Dr. King's nearly two years of treatment records (generally finding Mancini's spinal condition "stable" and "asymptomatic") carried far more weight. (Tr. 389-446). Finally, the ALJ stated that Dillard's opinions were undermined by the records of Mancini's treating physician. (Tr. 29). The record reflects several visits with her primary care physician, Dr. Thomas, for various reasons (Tr. 251-275, 316-318, 524-538), including, for instance, skin rashes (Tr. 251, 318) and sinusitis (Tr. 253, 258, 265, 267). And it appears that on only one occasion, December 7, 2016, did Dr. Thomas note anything about Mancini's musculoskeletal system, finding it unremarkable with a full range of motion. (Tr. 254-55). Thus, substantial evidence supports the ALJ's treatment of Nurse Dillard's opinions.

### 2.    *Debra Roggow, D.O.*

Whenever a physician offers an opinion concerning the nature and severity of a claimant's impairments—including the claimant's symptoms, diagnosis, and prognosis; physical and mental restrictions; or what the claimant can still do—the ALJ must state with particularity the weight given to the opinion and the reasons

therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).[6]

Without such an explanation, "it is impossible for a reviewing court to determine

whether the ultimate decision on the merits of the claim is rational and supported by

substantial evidence." *Id.* at 1179 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735

(11th Cir.1981)).

With respect to applications filed before March 27, 2017, an ALJ must

consider several factors when assigning weight to medical opinions. 20 C.F.R.

§404.1527(c). "For instance, the Social Security regulations command that the ALJ

consider: (1) the examining relationship; (2) the treatment relationship, including the

length and nature of the treatment relationship; (3) whether the medical opinion is

amply supported by relevant evidence; (4) whether an opinion is consistent with the

record as a whole; and (5) the doctor's specialization." *Schink v. Comm'r of Soc.

Sec.*, 935 F.3d 1245, 1260 (11th Cir. 2019) (citing *Sharfarz v. Bowen*, 825 F.2d 278,

280 (11th Cir. 1987)). Mancini does not allege that the ALJ failed to consider these

factors, and instead complains that the ALJ's reasons for discounting Dr. Roggow's

opinions are insufficient. (Doc. 19, pp. 23-25).

---

[6] For claims filed on or after March 27, 2017, the term "medical opinion" is no longer defined to include a diagnosis, prognosis, or judgment about the nature and severity of an impairment. Rather, it refers only to statements about what the claimant can still do despite any impairment(s), and whether there are any limitations in the claimant's abilities to perform the various demands of work and adapt to work-related conditions. *See* 20 C.F.R. § 404.1513(a)(2).

Mancini presented to Dr. Roggow on July 26, 2018, for a one-time examination (Tr. 547-550), during which Roggow completed a "Medical Source Statement" that parroted the functional limitations indicated, almost verbatim, in the same form completed four months earlier by Nurse Dillard. With respect to the purported limitations, Roggow differed from Dillard by acknowledging that Mancini did not have any color vision or field-of-vision limitations; by opining that Mancini was limited in her reaching abilities to *less than* one-third of the workday (instead of Dillard's one-third); and, by also further discounting Mancini's concentration, instruction-compliance, judgment and adaptability skills from one-third of the workday to *less than* one-third. (Tr. 551-554).

As to Dr. Roggow, the ALJ made the following determination:

> The undersigned gives little weight to the opinions of Debra Roggow, D.O. (Ex. 12F). This is a one-time examination by an evaluator chosen by the claimant who is utilized by the representative's law firm to support disability. The opinions are substantially similar to those of Pat Dillard, A.R.N.P., but are not supported by the consistent findings of Dr. King that the claimant met goals on June 15, 2016 and appeared stable and asymptomatic through 2017 and 2018. Further, the opinions are not supported by the claimant's treating physician who reported unremarkable physical findings throughout the treatment records.

(Tr. 29).

Since Dr. Roggow was a one-time examining physician, the treating-physician rule does not apply, and her opinion is not entitled to any special deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). And with respect to the

weight that an ALJ assigns to a medical provider's opinions, a federal court will neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Instead, the question is whether the ALJ's assessment of an opinion is supported by substantial evidence. Because Roggow's opinions were remarkably similar to those of Nurse Dillard, the substantial evidence that supports the ALJ's approach to Dillard's opinions likewise supports the ALJ's decision to discount Roggow's opinions. As the ALJ concisely stated, Roggow's opinions are neither supported by nor consistent with the nearly two years of treatment records from Dr. King or the records from Mancini's primary care provider. (Tr. 28).[7] *Cf.* 20 C.F.R. § 404.1527(c)(4) ("[T]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

---

[7] Notwithstanding Mancini's contention to the contrary, it does not appear that the ALJ discounted Dr. Roggow's opinions because she examined Mancini at her counsel's request. Rather, it appears the ALJ made this observation to note that Roggow's opinions are not entitled to the deference typically afforded to treating physicians. As the applicable regulations advise claimants: "We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source." 20 C.F.R. § 1527(a)(2). Even if the ALJ had discounted Roggow's opinions for this reason, any error would be harmless given the substantial evidence that supports the ALJ's decision to discount both Roggow's and Dillard's opinions—that is, their inconsistency with the years of records from Mancini's treating physicians. *See D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (rejecting complaints about the ALJ's reasons for assigning less weight to a physician's opinions "because the ALJ articulated at least one specific reason for disregarding the opinion and the record supports it").

### C.    Whether the ALJ properly considered Mancini's spine impairment.

Mancini asserts the ALJ misread nearly two years of Dr. King's treatment notes and suggests there should have been more exertional and postural limitations in the RFC to account for her complaints about spinal problems. An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all relevant evidence. 20 C.F.R. §§ 404.1545(a).

Mancini argues the ALJ "cherry-picked" parts of Dr. King's treatment notes and further contends some of the notes are both internally inconsistent and inconsistent with the notes made by nurses in his office. When she first began treating with King, Mancini complained of pain, discomfort, and loss of range of motion along her entire spine [cervical (neck), thoracic (upper and middle back), and lumbar (lower back) regions]. (Tr. 282). King's assessment was spondylosis, abnormal posture, stiffness of unspecified joint, and muscle spasm. He recommended chiropractic manipulation three times a week and group exercises. (Tr. 282).

By June 10, 2016, Mancini reported that her pain was much improved, and she was beginning to increase her activities of daily living due to decreased spasm and swelling (Tr. 470). On examination, Dr. King noted Mancini had much

improved cervical range of motion with a decrease in spasms, significant increase in improved posture, marked improvement in range of motion of the thoracic spine, and increased passive range of motion in the lumbar spine due to decreased swelling (Tr. 470).

On at least four occasions from June 13 to July 1, 2016, Mancini continued to report a decrease in pain, better range of motion, increased endurance, and an improvement in her activities of daily living (Tr. 463-464, 468-469). On June 27, 2016, and on at least eight other occasions through to the last record of April 18, 2018, Mancini reported to Dr. King that she felt fine. (Tr. 389, 393, 399, 402, 408, 445, 451, 459, 465). And by August 22, 2016, King's notes no longer repeated the information regarding Mancini's complaints from her initial intake. (Tr. 446). Instead, from August 2016 through April 2018, King continuously observed that Mancini's subluxations (slight misalignments in the spine) were asymptomatic and did not interfere with her activities of daily living. (*e.g.*, Tr. 445). In short, over the course of twenty months of visits, King found Mancini's condition "stable" and characterized by no complaints of any symptoms. (*e.g.*, Tr. 444). Thus, Mancini's "cherry-picking" argument lacks merit.

Mancini also avers that Dr. King's treatment notes are unreliable because they are inconsistent with treatment notes from Ericka Nelson, ARNP, and Patricia Dillard, ARNP, both of whom are non-acceptable medical sources from King's

office. (Doc. 19, pp. 17-19). The ALJ acknowledged the inconsistency. (Tr. 27). The ALJ discussed Nurse Dillard's March 2018 Medical Source Statement and afforded little weight to this opinion. (Tr. 26-27, 29). Specifically, the ALJ noted that x-rays on which Dillard purportedly relied were not in the record. (Tr. 27). She also reasoned that Dillard's opinion was inconsistent with the numerous reports in Dr. King's notes that Mancini was stable and asymptomatic. (Tr. 27).

Moreover, the ALJ's resolving in King's favor any inconsistencies between his notes and those of his nurses is further supported by other practitioners making similar findings. For example, over the course of his care, Mancini's primary care physician made only one reference to Mancini's musculoskeletal system and found it unremarkable with full range of motion in all joints (Tr. 255). And Dr. Robert Steele, the state agency consultant, opined that Mancini could perform light work with no postural limitations. (Tr. 78-80). Thus, substantial evidence supports the ALJ's decision to not include any further limitations in the RFC concerning Mancini's complaints about her spine.

**D.   Whether the ALJ properly considered the impact of Mancini's migraine headaches on her RFC.**

It is suggested the ALJ committed reversible error by finding Mancini's migraines to be a "severe impairment" while failing to explain the impact of this impairment on her RFC. (Doc. 19, p. 10). This contention has merit, and warrants reversal.

17

A determination that migraines are a severe impairment means the migraines significantly limited the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 404.1522(a); *Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896, 898 (11th Cir. 2010) ("By definition, a severe impairment limits significantly a claimant's ability to do basic work activities."). Indeed, the ALJ acknowledged as much by stating that Mancini's migraines "significantly limit the ability to perform basic work activities." (Tr. 23). But there is no indication that any limitations from Mancini's severe impairment of migraines were included in the ALJ's residual-functional-capacity assessment.

For instance, in *Binder v. Comm'r of Soc. Sec.*, No. 3:17-cv-1024-J-PDB, 2019 WL 1397923 (M.D. Fla. Mar. 28, 2019), we held the ALJ properly accounted for stress as a trigger for headaches by limiting the claimant to unskilled sedentary work with physical limits and no more than occasional and superficial contact with coworkers and the public. *Id*. at *3. And in *Gilbert v. Comm'r of Soc. Sec.*, No. 2:16-cv-840-FtM-CM, 2018 WL 1531914 (M.D. Fla. Mar. 29, 2018), the ALJ expressly linked a limitation to unskilled work to the claimant's problems with concentration attributed to headaches, and a limitation requiring the avoidance of dangerous, moving machinery to "migraine headaches, which cause pain and dizziness." *Id*. at *4.

18

In contrast, the ALJ in this matter neither expressly linked any of the RFC limitations to Mancini's severe impairment of migraines, nor did she discuss how migraines might affect Mancini's adaptability to work settings or her ability to perform job duties. While the RFC appears to account for Mancini's non-severe impairments of back and neck pain, vision issues, allergies, and asthma,[8] it does not appear to account for the only impairment the ALJ found to be severe— Mancini's migraines. The ALJ "needed to articulate what the plaintiff's significant limitations were from that impairment, or if there were not any such limitations, state that the headaches were a non-severe impairment. The [ALJ] cannot have it both ways." *Battles v. Colvin*, No. 8:15-cv-339-T-33TGW, 2016 WL 3360428, *3 (M.D. Fla. May 20, 2016), *report and recommendation adopted sub nom. Battles v. Comm'r of Soc. Sec.*, No. 8:15-cv-339-T-33TGW, 2016 WL 3258423 (M.D. Fla. June 14, 2016); *see also Reis ex rel. Reis v. Astrue*, No. 8:11-cv-2027-T-TGW, 2012 WL 3231092, *4 (M.D. Fla. Aug. 6, 2012) ("The problem here is that the [ALJ] seemed skeptical of the plaintiff's claim of migraine headaches [] but he nevertheless found that it was a severe impairment. Having made that finding, the [ALJ] needed to articulate what the plaintiff's significant limitations were from that impairment and reasonably explain to what extent the plaintiff could work despite the limitations.").

---

[8] Notably, the RFC expressly links Mancini's "asthma and/or allergies" to the limitation that she "avoid concentrated exposure to respiratory irritants, such as fumes, odors, smoke, gases, and poor ventilation." (Tr. 24-25).

The court should not be left to "speculate about the functional impact of Plaintiff's migraine headaches or whether such was fairly a part of the RFC assessment made by the ALJ." *Towner v. Astrue*, 8:11-CV-2258-T-30TBM, 2012 WL 6699627, *6 (M.D. Fla. Dec. 5, 2012), *report and recommendation adopted*, No. 8:11-cv-2258-T-30TBM, 2012 WL 6699617 (M.D. Fla. Dec. 26, 2012). When placed in such a position, we routinely remand for further consideration. *Dial v. Comm'r of Soc. Sec.*, No. 6:19-cv-1005-Orl-LRH, 2020 WL 5513338, *5 (M.D. Fla. Sept. 14, 2020); *Hill v. Saul*, No. 8:19-cv-121-T-TGW, 2020 WL 1430917, *4 (M.D. Fla. Mar. 24, 2020); *Gurske v. Comm'r of Soc. Sec.*, No. 6:17-cv-2050-Orl-DNF, 2019 WL 643722, *3 (M.D. Fla. Feb. 15, 2019); *Battles*, 2016 WL 3360428, at *3; *Reis*, 2012 WL 3231092, at *4; *Towner*, 2012 WL 6699627, at *6. As does the Eleventh Circuit. *See Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896, 898 (11th Cir. 2010) (reversing denial of disability benefits because the ALJ found IBS to be a severe impairment, but "the ALJ's analysis fails to discuss how IBS might affect [the claimant's] ability to perform her job duties").

"Substantial evidence does not support the finding that [Mancini] could return to her past relevant work because the ALJ did not meaningfully conduct the proper legal analysis about the effect of [Mancini's migraines] on her RFC." *Raduc*, 380 at 899 (11th Cir. 2010).

## III.   Conclusion

Upon consideration of the submission of the parties and the administrative record, it is **RESPECTFULLY RECOMMENDED** the decision of the Commissioner be **REVERSED** and **REMANDED** for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

Reported in Fort Myers, Florida on February 22, 2021.

_Nicholas P. Mizell_
_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**